McCraw v. City of Oklahoma, that's case 19-6008. Counsel, we're ready to hear you. Good morning and may it please the court, counsel. Joseph Tai for plaintiffs appellants and I'm going to optimistically try to reserve two minutes for rebuttal. The undisputed facts in this case compel at least two clear legal conclusions. First, the undisputed decades of popular use of highly visible medians in arterial streets across Oklahoma City by campaigners, activists, firefighters, panhandlers, and other speakers to reach large community audiences of slowed and stopped traffic compel the legal conclusion that these medians are traditional public fora. Can we not distinguish some medians from others? Do we have to treat them all the same way? Well, I think it's consistent with the Supreme Court's approach since the Hague case in 1939 to treat classes of public property the same that share common characteristics and long-standing uses. And in this case we have evidence that these medians as a class are typically wide, they're open, they're easily accessible, and they've hosted speech from a broad cross-section of the community. The First Circuit in the cutting case similarly found that medians as a class or as a group are medians that are in arterial streets that have a lot of volume that are particularly valuable to speakers. The Supreme Court in the... What was your answer to the question? That is to say if you have a median where the speed limit is 60 miles per hour versus one where the speed limit is 25 miles per hour or 35 miles per hour, can they be treated the same? Or should they be treated the same? Well, if I may just take a step back, I'll answer that question with, I think they should be treated the same, but if I can take a step back first. The reason why is, first of all, in the Supreme Court case of Frisbee, the court said streets are all traditional public fora, and so there doesn't need to be a particularized inquiry into whether particular streets are traditional public fora. And in our view it makes little sense to cut out the heart of these quintessential traditional public fora based on speed limit when the Supreme Court has not done so nor any other court with streets. Furthermore, with respect to the 60 versus the 20, in our view the 60 would actually be more likely to be traditional public fora because these are high visibility, high volume streets that speakers have tended to flock to because they can reach large audiences in little time. And I think the factual predicate that the city advances that they're speeding cars that are zipping by speakers is simply not well founded. Our plaintiff, Mark Faulk, testified without dispute that at these teeming arterial intersections, particularly during rush hour when the speakers tend to try to make the most of their little resources and time, the cars are largely stopped or they're slowed, and so you have this large captive audience. And what you can see from the photos and the record that we've submitted as well as testimony is around Oklahoma City it's the streets that are 40 or 45 miles per hour where every election cycle you see thousands of signs and they're mostly clustered at the tips of these intersections where they're most visible and so that's the wisdom of the crowd. And so back to your question, Judge Hartz, I would say that it's appropriate generally to classify this property based on its characteristics and uses as traditional public fora. I acknowledge that there may be some exceptions in the case law such as in the Grace case when they examined the particular sidewalk in the Supreme Court or in the Kokinda case when they examined the sidewalks in front of the post office, but I think those exceptions prove the general rule. So if we look at the medium as medias as a generic group for determining it's a public fora, do we still have to look at the medias individually or at least some categories subdivided for whether it's narrowly tailored for the narrowly tailored? Do you think we need to look at the individual medias or at least categories of media medians for that? Well, Judge Ebell, I think we look to McCullen and what McCullen requires is a close fit and so for this category of medians if we assume that they're traditional public fora there has to be at least evidence of a close fit between the evidence that the city of the interest that the city asserts and the tailoring and if the city can only produce evidence that a couple of these medians are actually presenting the dangers of pedestrians getting hit or causing accidents then a less restrictive alternative would certainly suggest themselves. So your answer is under the close fit or narrowly tailored analysis we can look to individual medias or at least categories of individual medias which we don't need to look at medians well we don't need to look at that for the determination of whether it's a public fora. That's right and if we look at the McCullen case of course on the tailoring analysis they looked at actual evidence of you know which sidewalks in front of which abortion clinics statewide had congestion because past was prologue and they found that because there was only one sidewalk in front of one abortion clinic one day a week that was congested that there just wasn't that evidence of a close fit. In this case we think... So that was looked at in that case for the close fit analysis not for the public forum. That's right that's right because for the public forum analysis the court took it for granted that sidewalks as a class are traditional public forum. Good. You know if I can address directly what may be the elephant in the room Evans versus Sandy City and I recognize there's an asymmetry of information here so I'm gonna hope for the best but plan for the worst. Yeah we think that the elephant actually doesn't belong in this room because there are several... I don't know how to interpret that laugh but I'll interpret it optimistically. We think there are several critical distinctions between Evans and this case. The first most obviously is that quite literally the median band there was a lot narrower. It applied to medians that are less than three feet wide or unpaved medians whereas here the sweeping band that Oklahoma City adopted applies to medians from the record. These medians that are outlawed are all more than three feet wide. Many of them are substantially more than three feet wide and close to intersections where our speakers prefer to stand. They're either paved or covered with lawn generally. Don't they like to stand on the few inches closest to the roadway regardless of how old they are? No not necessarily. Don't they stand on the end and hold out their signs and things like that? Not necessarily. I mean our speakers are experienced panhandlers and political activists. In fact there's a Kelly, the former chair of the Libertarian Party, on one of the outlawed medians and she's standing about five or six foot back right in the middle of the median so she's not actually within inches of the roadway. That's a very wide median. It is. Most of these are very wide medians because they're in multi-lane arterial streets and so I think in some of the neighborhood medians or in some non-arterial streets you'll see narrower medians but if you look at the photos and the record and the testimony of our plaintiffs most of these begin at the lower end eight to ten feet and some of them end up being quite wide but back to Evans I think the point is that in that case the medians that were legal that the court viewed as ample alternatives for Mr. Evans are precisely the medians that are outlawed here and furthermore in Evans the panel said that the plaintiff's speech was not effectively stifled because he could effectively walk down ten feet from a narrow median and still reach his So that really focuses on whether there's alternative methods of speech. I mean to me that is the big distinction between this case and Evans. Yes I think that's one big distinction and of course the ample turn of channels is an independent prong that they have to prove. In other words even if they prove ample alternatives it does not save their case if they fail to prove narrow tailoring and we don't think there are ample alternative channels here because we have undisputed testimony from our experienced political activists our campaigners and our panhandlers that sidewalks street corners and parks and other pedestrian areas in Oklahoma City simply do not provide the same access to a wide community audience just take the street corners and sidewalks for example just on the same arterial streets what the political activists say is that look you're so far off from the lanes of the other side that you're effectively only reaching the traffic near you and the First Circuit in cutting noted similar testimony. The panhandlers furthermore testify that when you're off to the side of the road it's ironically actually more difficult and dangerous to make the exchange because the drivers have to reach all across all the way across the car and the panhandlers are more likely to need to step off the road to make that to complete that exchange and again in the First Circuit there was similar testimony that some of the panhandlers there actually got on a bus to go to other cities because of so few trial to panhandle from the roadside. Now if we look at the city's what I think is the crux of the city's argument in this case which is that in the absence of any relevant accidents that they posit might happen on medians they advance the argument that they don't need to prove accidents because of the common-sense notion that speed kills and it's more likely to kill people standing on medians than at roadside locations and I think there's problems with each of those elements. First is the... Does it have to be accidents or can it be traffic congestion, increase in traffic congestion? Well I think accidents would be the most relevant and probative evidence and this follows from McCullen but I don't think it needs to be exclusively accidents Judge Lucero. For example there could be close calls, there could be evidence of lots of crashes at particularly problematic intersections. We don't even have that here. Maybe I Regardless of whether people are injured it causes congestion. People slow down to to talk to a protester or to give panhandler money and so on. Look for change. Is that, has that been raised as a ground for this restriction? A couple of responses to that. First of all the city did not raise congestion as an interest and secondly there's no evidence in the record that there is a congestion problem and in fact there's testimony by the panhandlers that at least on medians rather than at roadside locations it's very easy to make a quick exchange and move on safely. You know furthermore I think we don't want to lose sight of the bigger picture here which is even if there's a marginal increase in risk from standing on the median versus the roadside and by the way the record shows that over the past five years there's actually been more people hit on the roadside than on the medians. There was no evidence that people hit on the median. No, no. Zero. Zero and so mathematically speaking it's zero in the denominator over 40,000 vehicular accidents in the numerator over the last five years versus about 21 on roadsides and that's consistent with what our panhandlers testified which is that on the roadside it's also marginally more dangerous because you're further off from the driver's line of vision as opposed to being on the median. Now the other argument that the city makes is that speed kills and we don't debate that speed kills. Obviously it does but factually speaking speed has killed plenty of pedestrians and motorists and bicyclists in the roadways a small number on roadsides but none on medians but I don't want to give the impression either that if there's an accident on a median that suddenly the game is up and we lose. Because these traditional public fora have so have hosted so much speech safely for so long I think it would be incumbent on the city if there were a handful of accidents to happen to look to see why they happened. If they happened at nighttime then less restrictive alternatives Judge Ebell may very well be to limit their ban to nighttime like the First Circuit suggested. As the ordinance is written are most of the median areas boarded by sidewalks or other other places where the demonstrators and panhandlers could stand? Some are some are not. Judge Lucero I think the record reflects that regardless there are photos also in the record and you can see that some of those medians have crosswalks some of them don't but the record also reflects that our plaintiffs have had no problems accessing these medians waiting for a red light to cross the road safely and get on these medians and they've been on there for decades without any problems at all. And so I think this is a kind of risk that in the abstract may sound scary but these people have had decades of experience and it's quite safe in their view. To me this is kind of like the analogy of lightning striking right because the likelihood of fatality if lightning strikes may be rather high and that is I think common sense and scary but the risk of lightning hitting any pedestrian at the wrong place at the wrong time is actually vanishingly We actually submitted evidence in the record that in Oklahoma over the past 10 years there's only been one lightning fatality across the state and certainly the city could not close. Moving away from the facts very quickly just to the level of scrutiny. Yes Judge Lucero. Is it a given that this is under intermediate scrutiny? I think it's at least intermediate scrutiny because these are traditional public fora and I think also that the city's common sense and logic arguments may very well be appropriate under rational basis review if it weren't contrary to the evidence in the record. But certainly under intermediate scrutiny the Supreme Court and McClellan reminded us that the ability of the government to restrict speech in traditional public fora is very limited. Thank you. If I may reserve the balance of my time. May it please the Court. Amanda Carpenter, Catherine Campbell on behalf of appellees, the City of Oklahoma City, and Police Chief William Sitte in his official capacity. This case is about median safety. There was a discussion of forum analysis and we believe that this court should consider the individual medians at issue here which are medians in the middle of streets with speed limits of 40 miles per hour or more. The testimony presented at the trial was from our witnesses, city engineers, explaining that arterial roads are meant for moving traffic. They're meant for... So this case is then purely about safety? Correct Your Honor. And if it's purely about safety I would expect the record to demonstrate all kinds of accidents and occurrences that have made... that present your proof that this is just an unsafe practice. And it does, Your Honor. What is that proof? Your Honor, during the presentation presented by Chief Sitte in 2015 there was examples of not only medians that have been hit by cars showing the tire marks and our expert witness testified in the trial of this matter that those were in fact created by vehicles smashing into the sides of those medians but as well as pictures of vehicles going up onto... Smashing into... I mean if a tire rubs against the median it leaves a black mark. That's not smashing into it instead and threatening people on the median. It just means you left a mark. I mean when you parallel park you leave marks on this on the edge. So we just don't know. I mean we just don't know. I go through tires pretty regularly. Well, Your Honor, actually the testimony at the court by expert witness Sergeant Fowler was that the indications of the tires do show that they went up onto the median. It wasn't simply that they drove by and rubbed, which just as a matter of point even if they were just going by and rubbed they still have mirrors that hang out that are potentially dangerous to pedestrians. But the evidence showed that they actually went up onto the medians. There were pictures of accidents where vehicles were stopped on the median after an accident in the intersection. There were police reports that showed vehicles traveling onto and over the median for long distances. But in fairness, did any of these involve panhandlers or other demonstrators that were injured or in any way threatened? Luckily during those those accidents there were there was not a person present on the median. But they were locations that panhandlers and other political activists have been known to stand in the past. So it was lucky that at that time no one was harmed. And that's why the city of Deloge case has indicated that the municipality is not required to wait for a death or an injury before they take action to protect the pedestrians that are present in their city. I don't think anybody's arguing you have to have deaths, but gosh, the millions of cars that go through medians and the normal vigilance the people on medians are going to exhibit. We're talking about free speech here. One of our most valued values, highest important values. So the fact, I mean, it's not at all surprising that there are over the so many miles driven that there's going to be some connections with medians. But it just seems that there's there's really very little, nothing that shows that a person on the median was threatened or had to dodge or or anything. And even if there was one, I mean, when you consider the miles, I mean, even that I wouldn't think would be a very compelling argument against free speech. So I'm troubled about the impact on this high value of free speech that this ordinance has. Well, two things to that, Your Honor. First, it was testified by our police officer witnesses, both Chief Citi and Sergeant Fowler, that often the people who are involved in these activities, such as panhandling, do not come forward to police. So it's possible that there were interactions where a person had to dodge a vehicle and did not report it. But secondly, the reason, I agree with you, that free speech is very, very important. And the reason that the city of Oklahoma City has taken action to protect those pedestrians and recognizes that speech is that we've narrowly tailored our ordinance to only apply to the most dangerous situations. Both Chief Citi and Sergeant Fowler testified that there's a would tell you that if they were standing here today, all medians in the middle of the street are dangerous. You're standing in the middle of a street. However, in the in the range of safety, the safest location is on the side of the street where a pedestrian has more room to get out of the way should a vehicle be approaching. The second dangerous location is on the median where traffic is surrounding them on all sides and where they may be, they may have their back to traffic not paying attention, not be able to respond. And the third location is standing in the lane of traffic, which our ordinance does prohibit. In this situation, the city of Oklahoma City was presented with complaints of dangerous conditions, very similar to what was in Evans. If you read the Evans case, it talks about several close calls where pedestrians, it was notified that pedestrians were in dangerous conditions. It does not state that they had police reports saying that a pedestrian moved out of the way. They As I mentioned earlier, I think the big distinction between here and Evans is in Evans there was alternatives available. You could often move just a few feet down the median to get a broader median. Here, the alternative is to move off to the side of the road where, to the edge, to the sidewalk side where the signs are less effective and where panhandling is essentially not allowed or distributing brochures and pamphlets would not even be effective because you're on the passenger side of the car. Well, your that this is very similar to Evans because in Evans we had the plaintiffs who were able to move down to a wider portion of the median. Here, Calvin McCraw testified that he previously, before the ordinance went in place, used to panhandle at 63rd and made at the corner or the sidewalk location. He's still able to do that. George Marshall, who's a panhandler, testified. You don't mean where the median is next to the intersection. Do you mean on the sidewalk? Correct. He previously used the corner or sidewalk and he continue, can continue to do that. George Marshall testified that he used to stand at the medians at 140th and Penn and he is not prohibited from continuing to stand at that location. Mark Falk testified. On the sidewalk? No, at the median, your honor, because it's not a speed limit of 40 miles per hour. So he can continue to do that same activity after passage of this ordinance. Mark Falk testified that he in political advertising that he would do during campaign times. Again, not an ordinance that is prohibited under this ordinance. The City of Oklahoma City has provided the alternative channels. They can still stand on medians that have speed limits of less than 40 miles per hour because that danger is not going to create a death of a pedestrian. That danger is not present, like it is in medians within the middle of a street with 40 miles per hour. They can still stand on the corners of intersections. They can still stand on the sidewalk. They can still stand in other areas of the city that don't have medians that have parks and sidewalks and parking lots. This was found to be an acceptable alternative channel in the City of Deloge case where they held that allowing a distribution from the sidewalk to a stopped car did create a redondo, beach, or in Thayer, Oklahoma City's does not apply to the sidewalks. Unlike in Cutting and Reynolds, this is not a citywide median ban, which was the problem in those cases. Rather, like in Evans, we still have the same locations. Did any of these cases address the issue of the fact that on the sidewalk the person, panhandling or whatever, is on the opposite side of the car from the driver? Did any of them address that point at all? In the case law, it's not specifically called out. They did find that it would still be appropriate for those parties participating in that speech to do so from the side of the street, although it may be difficult. Oh, they did say that? They did, and so it goes back to, it doesn't have to be the best for the speech. It has to allow alternative channels of communication, which here we have done that. And as the District Court pointed out, in a fundamentally facial challenge, the court should not rely on plaintiffs' individualized circumstances in evaluating whether there are adequate channels, adequate alternative channels of communication. And this is citing Doe. However, the plaintiffs' representatives of those are speaking to their specific locations, their specific, and since this is a facially applied challenge, that would not be appropriate to look solely to their determination that it's harder for them. In this situation, they have alternative channels. They have locations that they've used before and can continue to use even though the ordinance is in place. The difference is they won't be in locations where if they are hit by a vehicle, they are likely to die. Do you think that the adequacy of alternatives needs to be looked at either on a median by median by median basis, or at least by categories of medians, or do you think you can look at a broad category of anything over 40 miles an hour? Well, Your Honor, like in Evans, this court said that we are not required to go median by median to make a factual determination of the safety of the medians within a municipality. Although that's what... But in that case, we're talking about the alternative methods of expression. In that case, the alternative methods of expression were determined often to be easy just by moving down the median where it was a little bit broader. And similar in this case, they can stand in the same locations they previously used to be able to, and on those streets where the 40 miles per hour is present, they can stand on the side of the road or in the corners of the intersection and still reach the same high-speed audience, just in a safer location. You asked whether or not we need to look at these as a category or as a median by median. In this situation, in the forum analysis, we would ask you to look to them as a category of 40 miles per hour or more street medians, because we do think there's a distinct difference. And when applying forum analysis, you need to look at those characteristics we believe are different. In the narrowly tailoring discussion, like in the Evans court, the court, the panel, and then the opinion stated that what we need to look at is, is there a risk? We know from the case law in Cutting and Reynolds and McClellan and Evans and Price that a public safety risk is a valid risk. We then need to look at what is the analysis of the area that you are attempting to regulate. And we looked at that and we did the research in Oklahoma City and determined that speed was the number one factor of determining whether or not pedestrians who are involved in auto vehicle, auto pedestrian accidents are likely to die. And so that's where we felt that it was appropriate. Speed dictated the volume of cars. Speed dictated the trajectory of the vehicle, how far they would travel. Speed dictated the ability of a pedestrian, as well as a passing driver, who is at issue in our ordinance, to be able to respond to a hazard. Speed indicated the severity of the injuries to the pedestrians. Here, the City of Hazard, in a roadway, traveling at 40 miles per hour, it takes approximately 152 feet to recognize that hazard and stop. And that's when that driver is taking active measures to stop the vehicle in response to that hazard. That doesn't include where a vehicle is engaged in an auto collision and is traveling across a location because of its energy or inertia. And as the expert testified, that is what we're trying to protect against. The situation where vehicles are distracted, because we did assert that as one of our government interests, we've said that the pedestrians that stand on the medians do create a distraction. In fact, plaintiffs all testified that that was their volume intersections and distract the driver away from the act of driving. And so that is a condition because at those high speeds, the drivers can't react as quickly. It takes 152 feet at 40 miles per hour versus 99 feet at 30 and 57 feet at 20 miles per hour. Additionally, we had Eric Winger testify that these arterial streets have the intent of moving traffic. They're not made for pedestrians. And although appellant has argued that many of the pictures indicate these wide open grassy medians, I would encourage you to look at the pictures because the pictures presented are of medians that don't fall under this ordinance. The pictures with park benches and playgrounds, those don't fall under this ordinance. Many of appellants or plaintiffs' pictures presented in the 30 miles per hour. How will we know which of these pictures do meet the 40 mile an hour criteria or not? Are they so labeled or how will we know? They are labeled, Your Honor. Yes. How are they labeled? At the top of the page, they are labeled with the location as well as the speed limit. So we don't believe that it's appropriate for the court to, for the appellants to present to this court that all of them are these wide grassy medians. In arterial streets, they're not. They're traffic control devices. You know, I was just trying to quickly put my hands on the ordinance, but does the ordinance cover all medians or just certain dimensions of medians? Your Honor, the ordinance covers any median that's in the middle of a street with a speed limit of 40 miles per hour or more. And even if it were a wide median enough to hold a parade in the middle, it's still covered. Well, Your Honor, I would assert that there aren't any that are wide enough to hold a parade. And I will tell you that that's one of the provisions that appellant says, right, is we didn't consider width. We didn't consider time when, in fact, we did. Our original ordinance... I just thought you just told me you didn't. No, we did consider it when narrowly tailoring and picking only the streets with 40 miles per hour. Our first ordinance that was... You considered only speed, not dimension. Because dimension, the testimony from our experts is that there isn't a way to determine what width the median becomes safe. Thank you. May I ask one question? Sure. About these broad medians and these big streets, I'm a little confused about this one street. Was it Jefferson or what? Lincoln. Lincoln Street. I don't quite understand what the status of that is in this case. Just explain. Is there a dispute about that? You can see it just in one paragraph. How does it fit in with all these other medians? Well, Your Honor, Lincoln is actually a state highway. It's not a road. I know that. I know that. But how are you... Are you asserting this ordinance on that or not? I mean... No. We do not assert it on that because, first, there's a portion... So we can just set that median aside? Correct, Your Honor. And that's what the district court did. We don't worry about that at all? Correct, Your Honor. Okay. Thank you. Thank you. Thank you. Well, I'll admit it to your time. Thank you very much, Judge Estrella. And I'll try to be quick up here. So with respect to the Lincoln Boulevard medians, it is in a state highway, but the city every year grants a permit to close down that avenue so that they can have a parade. And just anecdotally speaking, I've been ticketed by OKCPD on state highways in Oklahoma City. I'd love to raise the defense that they have traffic jurisdiction. With respect to... Well, it's not for them to ticket you. It's another to say they're ticketing you under a city ordinance. That doesn't apply. But I think the authority for them to ticket is because there's a state law that says cities have the authority to operate and control the uses of streets, roads, and other public ways within the municipality. And so what they've said in their brief is that the state owns Lincoln Boulevard medians and the state maintains Lincoln Boulevard medians, but they don't say that the state rather than the city has traffic jurisdiction over Lincoln Boulevard. But even putting those aside, they're not ample alternative channels for the local political activists who need to reach the voters in the precincts wherever they vote across the sprawling metropolitan area. And speaking of just the photos and what my sister on the other side of the table said, that some of them are under 40 miles per hour. They were when this case was originally litigated, but we've labeled all of them and so there are plenty of photos of medians that are over 40 miles per hour. And in fact, the photos of median damage... Let me ask you this quickly because your time is going to run out. Yes. Would this ordinance be okay if it said it applies to all medians where the speed limit is in excess of 45 miles per hour and the median is less than 10 feet wide? Well, I don't think we can judge that in the... Do you still have a squawk? I don't think, Your Honor, we can judge that in the abstract without actually evidence that there are traffic safety problems with that class of medians. Thank you. I take that as an answer is no. The answer is no. If I can conclude just with one very quick thought, life is full of risk and we need to balance the risk that's proven with the fundamental value of free speech. And we think we know which way the balance should end up here. Thank you very much. Thank you, Counselor. Counselor, excused.